# FOR PUBLICATION



FILED
Jul 26 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

<u>ATTORNEY FOR APPELLANT</u>:

**EDWARD P. GRIMMER**
Austgen Kuiper & Associates, P.C.
Crown Point, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DENISE A. MERTZ, n/k/a<br>DENISE A. GRIMMER, )<br><br>Appellant-Petitioner, )<br><br>vs. )<br><br>ROBERT G. MERTZ, )<br><br>Appellee-Respondent. ) | <br><br><br><br><br>No. 64A03-1108-DR-360 |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Edward J. Nemeth, Special Judge
Cause No. 64D01-0701-DR-339

**July 26, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Denise (Mertz) Grimmer ("Mother") and Robert Mertz ("Father"), who have two children, were divorced in 1994. Over the course of these proceedings, Father's child support obligation has been modified many times, and due to arrearages, Father's driving privileges were suspended. The most recent court order modified his weekly child-support obligation to what amounts to half of his income: $49 for support, $62 for educational expenses, and the remainder toward his arrearage. In addition, because Father agreed to pay one-half of his income toward these amounts, his driving privileges were reinstated. On appeal, Mother contends that the trial court erred in modifying his child-support obligation and in reinstating Father's driving privileges. We conclude that the trial court did not err in modifying Father's child-support obligation. We also conclude that Father's plan to pay one-half of his income toward his support obligation was a sufficient plan to warrant reinstatement of his driving privileges. We affirm.

**Facts and Procedural History**

Father and Mother, the parents of two daughters, were divorced in 1994. In the years following their divorce, the parties have litigated various post-dissolution matters. Before this most recent trip to court, an order from 2005 required that Father pay $272.27 per week in child support, which included $36.47 in post-secondary educational expenses for the parties' oldest daughter, S.M. *See* Appellant's App. p. 111. When she graduated from college in late 2008, the parties informally agreed—though never memorialized by court order—that Father would no longer pay the $36.47 educational expense.

2

In the time period between entry of the 2005 order and the filing of the petitions underlying the current order, Father was found in contempt for failure to pay child support on at least two occasions, was jailed twice, and had criminal charges filed against him for failure to pay child support. In November 2008, Father's driving privileges were suspended pursuant to Indiana Code section 31-16-12-7 due to his failure to pay support.

In early 2010, Father filed a petition to emancipate the parties' youngest daughter, J.M. Father later amended this petition to seek emancipation or in the alternative to modify his child-support obligation and redirect support payments to J.M. because she was no longer living with Mother. Father also filed a petition for reinstatement of his driving privileges. Mother filed a motion to determine Father's arrearage and a motion to modify support to include college expenses for J.M. A summary hearing on all pending motions was held in October 2010. Counsel summarized the testimony of their clients and introduced supporting exhibits. At the opening of the hearing, Father's counsel indicated that Father did not intend to pursue the emancipation petition, but he still wanted the trial court to consider ordering support paid directly to J.M. Counsel also detailed Father's recent financial difficulties and decrease in income from past years. Finally, counsel set forth Father's proposed plan for meeting his child-support obligation; specifically, that Father, who was working two jobs in Florida and making approximately $575 per week, intended to pay one-half of his income toward his obligation. Counsel for Mother argued that Father should be required to pay educational support for J.M. and that Father was not entitled to a modification of support because he did not keep sufficient records of his income and had a history of underreporting that income.

3

In March 2011, the trial court entered findings and conclusions. In its findings, the court discussed Father's financial history in detail:

> 13. The Court finds [F]ather claims his earnings in 2008 were $25,171.48 and in 2009 were $2,016.00.
>
> \* \* \* \* \*
>
> 18. The Court finds [F]ather is currently working two jobs in Florida, one with U-Haul and the other with Air Wisconsin. His current average weekly gross income determined by averaging the income from the two jobs is $575.00. The Court finds [M]other's current weekly gross income is $524.00.
>
> 19. In 2005, [F]ather claimed his income to be $70,000.00 per year. In the Court's August 5, 2005 Order the Court determined [F]ather had an earning capacity of $90,000.00/$91,000.00 and imputed [F]ather's income at $91,000.00 per year and $1,752.25 weekly.
>
> 20. Since 2005 [F]ather's income has been significantly reduced. [F]ather is still plagued by the same issue as noted in the Court's previous Orders . . . Father's record keeping remains suspect for all the reasons previously stated in those Orders.
>
> 21. The Court finds [F]ather admitted that he did not file a tax return in 2008, even though he had earnings including his self-employment in Florida, and he had self-employment income in 2009. He did not report any of that income to the IRS because he did not keep records and did not know how much to report.
>
> 22. The Court finds that [F]ather's pattern of unreliability continues despite all the previous warnings. [F]ather's recent efforts to pay child support have improved. He appears to be motivated by his jail time and present charges. Even with this pending over his head the economy continues to be an obstacle to his ability to work. [M]other provided several support worksheets suggesting [F]ather's income range to be $1,040.00/$1,060.00 per week. Based on [F]ather's employment skills and abilities, taking into account the economy and specifically the construction industry the Court imputes [F]ather's income at $1,000.00 per week.

*Id.* at 32-33. The court estimated Father's arrearage at more than $100,000 plus interest and medical fees owed to Mother. *Id.* at 34. The court then proceeded to the issue of driving privileges, noting that in order to reinstate Father's driving privileges, it "must find that [F]ather has a plan in place to repay the arrearage and that income[-]withholding

4

orders are implemented." *Id.* The court concluded that Father had established such a plan:

> 28. The Court finds that [F]ather has been paying support through an Income[-]Withholding Order since February 4, 2010 from U-Haul and since April 27, 2010 from Air Wisconsin. Father intends to maintain both positions and continue to pay ½ of his income toward support and arrearage.
> 29. The Court finds [F]ather has met the criteria of [IC] 31-16-12-11 and his driver's license shall be reinstated instanter, subject to continuously having Income[-]Withholding Orders active.

*Id.* The court then considered the issue of Father's support obligation, noting that Father's obligation was last modified in 2005 when his imputed gross weekly income was $1752.25, or $91,000 per year. *Id.* at 36-37. Father then experienced a steep decline in income, making only $25,171.48 in 2008 and $2016 in 2009. Based on this, the court imputed income of $1000 per week to Father and granted his petition to modify support:

> CONCLUSIONS OF LAW
> 1. The Court finds that IC [31-16-8-1] requires a showing of changed circumstances so substantial and continuing to make the terms of the current Order unreasonable; or a twenty percent difference in the amount that would be paid, and it must have been more than one year since the child support had last been modified. This case meets this criteria and child support should be modified.
> * * * * *
> 6. The Court finds that [F]ather's Petition to Modify Support is granted. Father has shown that there is substantial change in circumstances that makes the present terms unreasonable and that [F]ather has been Ordered to pay an amount in child support that differs by more than 20%.
> 7. Pursuant to the attached Child Support Obligation Worksheet . . . [F]ather's gross income is $1,000.00 per week. Mother's gross income is $524.00. Mother is given credit for health insurance costs of $17.00. Child support is set at $49.00 per week which is consistent with the Indiana Child Support Obligation Worksheet. . . .
> 8. The Court is able to discern enough to know that [F]ather's arrearages will be well over $100,000.00 not including fees, attorney fees, interest an[d] medical costs. So as not to delay this case any longer, from each pay check, shall be deducted $49.00 current support; $62.00

5

> educational expenses with the remaining amount toward arrearages. In order to have his driver's license reinstated, [F]ather has agreed to pay ½ of his wages of his income toward these amounts.

*Id.* at 36, 37-38. Finally, the court granted Mother's petition as to educational expenses for J.M. and ordered Father to continue to pay half of his income through income-withholding orders, to be applied to his current support obligation, college expenses, and arrearage. Mother filed a motion to correct error, which was denied. She now appeals.

### Discussion and Decision

At the outset, we note that Father did not file an appellee's brief. Under that circumstance, we do not undertake to develop the appellee's arguments. *Branham v. Varble*, 952 N.E.2d 744, 746 (Ind. 2011). Rather, we will reverse upon an appellant's prima facie showing of reversible error. *Id.*

Here, the trial court entered findings of fact and conclusions thereon. As a result, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Carpenter v. Carpenter*, 891 N.E.2d 587, 592 (Ind. Ct. App. 2008). We will set aside the trial court's findings only if they are clearly erroneous—that is, "when a review of the record leaves us firmly convinced that a mistake has been made." *Id.* (quotation omitted). "Although we defer to a trial court's ability to find the facts, we do not defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard." *Id.* (quotation omitted).

### I. Modification of Child Support

6

Mother first contends that the trial court erred by modifying Father's child-support obligation. In reviewing a decision regarding a petition to modify child support, we will reverse if there is a showing that the trial court abused its discretion.[1] *Meredith v. Meredith*, 854 N.E.2d 942, 947 (Ind. Ct. App. 2006). We consider the evidence most favorable to the judgment without reweighing the evidence or judging the credibility of the witnesses. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances that were before the trial court, including any reasonable inferences to be drawn therefrom. *Id.*

Indiana Code section 31-16-8-1 provides that modification of a child-support order may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> (2) upon a showing that:
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1(b). Mother contends the trial court erred in finding a substantial change in Father's income warranting modification of child support because Father should not "be rewarded by any reduction in the amount that was found in 2005 to be his earning capacity" because he has continued to conceal income, as the trial court acknowledged when it found Father was "still plagued by the same issues as noted in the

---

[1] Mother argues that because the trial court held a summary hearing, our standard of review with respect to this issue is de novo. Even if we were to employ de novo review, *See GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) (considering a ruling on a Trial Rule 12(B) motion), we would nonetheless conclude that modification of Father's child-support obligation was proper.

7

Court's previous Orders" and that his "pattern of unreliability continues despite all the previous warnings." Appellant's Br. p. 29.

Father introduced into evidence a child-support worksheet asserting his weekly gross income to be $575, a significant decrease from the approximately $1750 per week imputed in 2005. Mother pointed out that courts have found throughout these proceedings that Father has historically "engage[d] in self-employment, doesn't keep records, and underutilize[d] his earning capacities," Tr. p. 47, and asserted that he continued in 2009 and 2010 to have a landscape business for which he kept no records. Mother also asserted Father lived rent-free with his significant other. Mother therefore contended Father should continue to have imputed income and cannot show a substantial change in circumstances.

The trial court did not disagree with Mother that Father should be imputed income due to his undocumented self-employment. However, "taking into account the economy" which "continues to be an obstacle to his ability to work," Appellant's App. p. 33, the trial court found that Father's imputed income should be decreased to $1000 per week. In determining parents' income for child-support calculations, "the definition of 'weekly gross income' is broadly defined to include not only actual income from employment, but also potential income and imputed income from 'in-kind' benefits." *Knisely v. Forte*, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007) (citation omitted). Irregular income is a very fact-sensitive determination. *Id.* "Potential income is determined from work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." *Elliott v. Elliott*, 634 N.E.2d 1345, 1349 (Ind. Ct. App. 1994). Further,

8

"regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, should be the basis for imputing income." Child Supp. G. 3(A) Commentary 2(e); *see Glass v. Oeder*, 716 N.E.2d 413, 417 (Ind. 1999) (holding that father's rent-free living arrangement was a proper basis for imputing income). In short, the trial court properly imputed income to Father over and above what he showed as wages from his two jobs due to his unreported self-employment income.

In the absence of concrete information in the record from which to determine Father's potential income, we consider that five years have passed since the last determination of Father's income and, as the trial court did, acknowledge the effects of the economy on Father's employment opportunities. We also note that Father's verifiable income has decreased steadily since 2000.[2] In previous orders, the trial court determined Father's income by adding his verified income to an additional imputed amount. The fact that the trial court again found that Father's "unreliability" in reporting his income warranted imputation of income does not require that the court impute to Father the same level of income as five years before. It was within the trial court's discretion to re-evaluate Father's financial resources—both actual and potential—when requested. In this regard, we note, as the trial court did, that the child-support worksheet

---

[2] Mother also contends the trial court erred in "review[ing] the entire case history and . . . not confin[ing] itself to the record as the two advocates had presented the evidence . . . ." Appellant's Br. p. 41. Mother references a part of the trial court's order in which it stated that it had taken judicial notice of the entire file. *See* Appellant's App. p. 31. The trial judge who heard the instant motions was a special judge, following two judges in Hamilton County and two judges in Porter County and proceedings spanning approximately fifteen years. *See id.* Indiana Evidence Rule 201 provides that a court may take judicial notice of law, including records of a court of this state, whether requested or not, and at any stage of the proceedings. Ind. Evid. R. 201(b), (c), (f). Here, the trial court was not taking judicial notice of the records of "a" court of this state, but of its own records of which the parties to the case were well aware. This was not error.

Mother submitted to the trial court with her proposed findings and order showed Father's income as $1040 per week, which is not appreciably different from the $1000 per week the trial court imputed to Father. We cannot say that the trial court abused its discretion in assessing Father's income when considering the record before us. Given that Father's income is approximately half what it was at the time of the last order, modification of child support based upon the new figure does not amount to reversible error.

## II. Reinstatement of Father's Driving Privileges

Mother also contends that the trial court erred in reinstating Father's driving privileges. Indiana Code section 31-16-12-7 provides in relevant part:

> If a court finds that a person is delinquent . . . as a result of an intentional violation of an order for support, the court shall issue an order to the bureau of motor vehicles:
> (1) stating that the person is delinquent; and
> (2) ordering the following:
> > (A) If the person who is the subject of the order holds a driving license or permit on the date of issuance of the order, that the driving privileges of the person be suspended until further order of the court.

A person is considered delinquent if he or she is at least $2000 or three months past due on payment of court-ordered child support. Ind. Code § 31-25-4-2. There appears to be no dispute that in November 2008, the trial court had properly issued an order to the Bureau of Motor Vehicles to suspend Father's driving privileges pursuant to Indiana Code section 31-16-12-7.

Father subsequently requested that his driving privileges be reinstated pursuant to Indiana Code section 31-16-12-11, which provides:

> Notwithstanding section 7 . . . of this chapter, the court may stay the issuance of an order under section 7 . . . if:
> > (1) the person pays the child support arrearage in full; or

10

> (2) an income withholding order under IC 31-16-15 . . . is implemented and a payment plan to pay the arrearage is established.

In arguing that his driving privileges should be reinstated, Father informed the trial court that income-withholding orders were in place for each of his two jobs and that he would pay one-half of his income toward child support, educational expenses, and his arrearage.[3] The trial court noted that in order to reinstate Father's driving privileges, it was required to find that there was "a plan in place to repay the arrearage and that income[-]withholding orders are implemented." Appellant's App. p. 34. Finding that Father had been paying support through income-withholding orders for several months from his two jobs and that he "intends to maintain both positions and continue to pay ½ of his income toward support and arrearage[,]" *id.*, the court concluded that Father had satisfied the statutory requirements and that his driving privileges should be reinstated.

On appeal, Mother contends the trial court's construction of Indiana Code section 31-16-12-11 to allow reinstatement of Father's driving privileges is contrary to the plain language of the statute. She notes that license suspension is mandatory upon a finding of delinquency; thus, she argues that the legislature intended to impose a serious sanction on a delinquent obligor, and only a plan that is reasonably calculated to remedy the arrearage in full should be considered sufficient to lift the sanction. We have found no cases considering these statutes.

Interpretation of a statute is a question of law which we review de novo. *In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind. 2007). We first examine whether the language of the statute is clear and unambiguous. *City of Carmel v. Steele*, 865 N.E.2d

---

[3] These were Father's arguments at the hearing in support of reinstatement; the actual petition for reinstatement is not included in the appellate record.

11

612, 618 (Ind. 2007). If it is, we will not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. *Id.* However, when a statute is susceptible to more than one interpretation, it is deemed ambiguous and open to judicial construction. *Id.* It is a well-established rule of statutory construction that we will attempt to determine and give effect to the intent of the legislature, and, to that end, we read provisions of a statute together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* We presume that a statute was to be applied in a logical manner. *See State v. Hensley*, 716 N.E.2d 71, 76 (Ind. Ct. App. 1999), *trans. denied.*

We conclude that the language of Section 31-16-12-11 is clear and unambiguous. It requires that an obligor establish "a payment plan to pay the arrearage." It does not impose any constraints upon that plan. We therefore conclude that the sufficiency of a plan offered by an obligor is best determined by a trial court, which is well-versed in the specific facts of a case. Here, the court concluded that Father's plan to pay one-half his income toward his obligation was sufficient, and we agree.

We recognize that Father's arrearage is substantial—the trial court estimated Father to be at least $100,000.00 in arrears. Clearly, paying this arrearage in full will take many years, a fact the trial court acknowledged. However, the court also acknowledged that if Father is able to drive, the likelihood that he will continue to meet his support obligation increases. The trial court's ultimate decision to reinstate Father's driving privileges is in line with public policy. Our goal should be to ensure that an obligor meets his or her obligation and at times, the courts hold the key to incentivize—

12

rather than discourage—continued employment to meet those obligations. Our Supreme Court has recognized that there may be a tipping point at which an obligor has no incentive to fulfill his or her support obligations. *See Lambert v. Lambert*, 861 N.E.2d 1176, 1181 (Ind. 2007) (noting that obligors may view certain methods of collecting support, such as high maximum garnishment rates, as disincentives to seek legitimate gainful employment). Here, the trial court concluded that Father had established a plan to pay his arrearage and that reinstatement of his driving privileges made it more likely that Father would continue to meet his obligation. We conclude that the trial court did not err by reinstating Father's driving privileges.

Affirmed.

NAJAM, J., concurs.

ROBB, C.J., concurs in part and dissents in part with separate opinion.

**IN THE**
**COURT OF APPEALS OF INDIANA**

DENISE A. MERTZ, n/k/a )
DENISE A. GRIMMER, )
            )
     Appellant-Petitioner, )
            )
         vs. )    No. 64A03-1108-DR-360
            )
ROBERT G. MERTZ, )
            )
     Appellee-Respondent. )

**ROBB, Chief Judge, concurring in part and dissenting in part.**

I concur with the majority that the trial court did not err in modifying Father's child support obligation as discussed in Part I, but respectfully dissent from its conclusion in Part II that the trial court did not err in reinstating Father's driving privileges.

I agree with the majority that the language of section 31-16-12-11 is clear and unambiguous. Accordingly, deciding whether Father's driving privileges could be reinstated is a question of law. It is not a question of weighing the evidence, but strictly a determination of whether the outcome is consistent with the legislative mandate. In order to have driving privileges reinstated, the statute requires as a matter of law that the

14

obligor either pay the arrearage in full or establish a payment plan to pay the arrearage via income withholding order. Given that the two alternatives for reinstatement are to pay in full or establish a payment plan to pay, the "plain, ordinary, and usual meaning" of "a payment plan to pay the arrearage" is a plan that will pay the arrearage in full, not simply pay toward or pay down the arrearage. See State v. Am. Family Voices, Inc., 898 N.E.2d 293, 297 (Ind. 2008) (stating that if the statutory language is clear and unambiguous, "we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings.").

Father's proposed payment plan is to pay fifty percent of his income via income withholding order toward his current child support obligation, educational expenses, and his arrearage. It is important to note that Father is not proposing to pay fifty percent of his income toward his arrearage; rather, he is proposing to pay his current child support obligation – set at $49.00 per week; his share of educational expenses – set at $62.00 per week; and then whatever amount brings the total withholding to fifty percent of his income toward his arrearage. Reviewing Father's child support payment history through the Porter County Clerk's Office for the five months prior to the hearing on this matter shows that Father had paid just under $5,000.00 in that time, or an average of approximately $250.00 per week. Deducting his current child support and educational expense obligations from this amount yields approximately $140.00 per week to be applied toward his arrearage. Based on the evidence presented at the hearing, the trial court was not able to determine the actual amount of Father's arrearage, but both parties

15

seem to agree with the trial court's assessment that his arrearage is in excess of $100,000.00. Statutory interest alone on this amount would exceed $140.00 per week.

Although the statute gives the trial court discretion in reinstating an obligor's driving privileges, see Ind. Code §31-16-12-11 ("the court may stay the issuance of [a suspension] order") (emphasis added), I do not believe the statute gives the trial court the discretion to reinstate Father's driving privileges under the circumstances of this case. Although there is nothing wrong with Father's plan per se, it is not as a matter of law a "payment plan to pay the arrearage." In fact, it will barely make a dent in the arrearage, if at all. Thus, although Father is certainly entitled to propose paying only fifty-percent of his income toward his child support obligations (past and present) and the trial court may be entitled to accept that proposal, I do not believe the trial court is also entitled to reinstate his driving privileges based upon such a proposal. Unfortunately, given the substantial amount of Father's arrearage, even a proposal to pay 100 percent of his income might not amount to a "plan to pay the arrearage." As such a proposal would be both unreasonable and contrary to law, however, I believe the trial court could exercise its discretion in this case and reinstate Father's driving privileges only if Father established a plan to pay the maximum amount allowed by law, or sixty-five percent of his income. See 15 U.S.C. § 1673(b)(2). Nothing more can be legally required of him, but anything less under the circumstances of this case is contrary to the statutory language that "a payment plan to pay the arrearage" be established before the trial court may reinstate previously-suspended driving privileges.

I take into account that after many years of failing to meet his obligations, Father appears to be taking responsibility for financially supporting his children and I do not wish to discourage him from continuing to do so. However, there is no "tipping point" exception to the dictates of the statute. See slip op. at 13. In other words, I do not believe the trial court's discretion extends so far as rewarding something less than a plan to pay the arrearage with the reinstatement of driving privileges based solely on the determination that reinstatement will make it more likely Father will comply with a plan that does not meet the requirements of the statute in the first instance.

The statute requires "a payment plan to pay the arrearage" be established in order for the trial court to reinstate Father's driving privileges. As Father's plan will neither pay his arrearage nor does it require him to pay the maximum amount allowed by law, I would hold the trial court clearly erred in reinstating Father's driving privileges. Accordingly, I dissent from Part II of the majority decision.

17