## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 14 2017, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Frederick B. Ettl
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Alan Perry, <br> *Appellant-Defendant,* <br><br> v. <br><br> Julieann Perry, <br> *Appellee-Plaintiff.* | November 14, 2017 <br><br> Court of Appeals Case No. 71A03-1703-DR-704 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable David C. Chapleau, Judge <br><br> Trial Court Cause No. 71D06-0611-DR-686 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Jeffrey Alan Perry ("Father") appeals the trial court's order modifying custody of his daughter, granting Julieann Perry nka Heater ("Mother") primary

physical custody.  Before the hearing, Father sought two continuances, and while the first request was granted, the court denied his second request.  After the hearing, the court ordered Father's parenting time to be reduced to every other weekend, starting Saturday morning and ending Sunday evening.  Father was also permitted a visit every Wednesday afternoon after school.  The court also awarded Mother roughly $4800 in attorney's fees.

[2]     Father argues that the trial court abused its discretion when it: (1) denied his second request for a continuance, (2) modified physical custody, and (3) granted Mother's request for attorney's fees.  We affirm on the first two issues but reverse the award of attorney's fees because the court failed to inquire about the parents' current financial resources.

# Facts and Procedural History

[3]     Mother and Father divorced in November 2008.  They shared joint legal custody of their daughter, E.P., who was born in November 2004, and each exercised equal parenting time with E.P.  In 2014, E.P. was touched inappropriately while at an after-school program.  Mother began taking E.P. to a therapist, Kathy James.  E.P.'s therapy sessions, while initially focused on the touching incident, always had a theme of what is and is not safe for E.P.  Over the course of these sessions, E.P. disclosed incidents of physical and emotional abuse while in Father's custody and indicated that she was afraid of Father.

[4]     Based on these disclosures, James felt that E.P. was "not safe" in Father's care and reported her concerns to Mother. Tr. Vol. II p. 12. In January 2016, Mother petitioned the trial court for an emergency modification of custody. After a brief hearing, the court denied Mother's petition. The court, however, appointed Andrea Halpin as the guardian ad litem (GAL) and ordered Mother, Father, and E.P. to submit to a psychological custody evaluation by Dr. Tony Berardi. Dr. Berardi notified the court, Mother, and Father that he had worked previously with Mother during a custody dispute for Mother's current husband. Father sought to have a new therapist assigned to the case. A hearing was held on the motion, and the court ultimately denied his request.

[5]     As part of Dr. Berardi's evaluation, he interviewed E.P. by herself. Dr. Berardi submitted his summary of this interview "in camera," and the trial court "seal[ed] it for appellate review only." *Id.* at 103. After Dr. Berardi and the GAL had conducted their evaluations, they recommended that Mother be given sole legal and primary physical custody of E.P. Mother then petitioned the court to modify custody in accordance with these recommendations. An evidentiary hearing on Mother's requests was set for January 6, 2017.

[6]     In November 2016, a month after Mother filed her petition, Father changed attorneys. On December 30, Father's new attorney requested a continuance, arguing that he had represented Father for approximately six weeks and needed more time to review Dr. Berardi's file on the case, which included 200 pages, some of which were handwritten notes. The trial court granted the motion, moving the hearing from a Friday to a Monday. The day of the hearing,

Father's attorney renewed his request for a continuance, arguing that he had not been able to meet with Dr. Berardi except for a ten-minute period right before the hearing commenced. When questioned about his efforts to contact Dr. Berardi after the court granted the continuance, Father's attorney stated that "we've had a four-day week" and that he had not placed a call to Dr. Berardi's office to talk about his case notes. *Id.* at 90. The court denied the request for an additional continuance.

[7] During the hearing, the GAL and Dr. Berardi both testified that Father had "vulnerabilities" in his parenting style that needed to be addressed for E.P.'s well-being. *Id.* at 110-112, 190. Those vulnerabilities included "reactive anger" that occasionally "spill[ed] over into violence," denial of his actions and how they impacted E.P., self-centeredness, and "lack of insight and appreciation for how people have different views and different feelings." *Id.* at 190. Father's violent acts included kicking E.P., throwing things at her head, kicking a wall so hard that framed pictures fell to the ground and broke, and placing his hand under E.P.'s chin and lifting her up so that she was standing on her tip toes. Because of these vulnerabilities, Dr. Berardi expressed concerns about Father's parenting and the emotional toll it was having on E.P. Dr. Berardi concluded that it would be in E.P's best interests for Mother to be granted sole legal custody and primary physical custody, with Father receiving parenting time consistent with the Indiana Parenting Time Guidelines ("Guidelines").

[8] Concerns were also raised regarding Father's willingness to help E.P. with her homework. Specifically, there was an instance where "Father punished [E.P.]

and wouldn't let her do her homework." *Id*. at 112. "Father had had [E.P.] clean her room instead of do her homework, and he told the teacher that [E.P.] had responsibilities, and if she couldn't do them, that there would be punishment." *Id*. When asked directly what his policy was regarding homework, Father stated, "The policy is do it yourself, pretty much." Tr. Vol. III p. 27. Mother had a "more interactive" process to help E.P. with her homework. *Id.*

[9] Father has also struggled with getting E.P. to school on time. When E.P. was in fifth grade she had approximately seventeen tardies, all on days when she was in Father's care. E.P.'s school sent home a note stating that "if she missed anymore, she was going to have to have doctors' notes for being late[.]" Tr. Vol. II p. 113. At the time of the hearing in January 2017, E.P. was in sixth grade and had accumulated three tardies, all during Father's parenting time.

[10] Mother also requested that the trial court award her attorney's fees and order Father to share the cost of the custody evaluation Dr. Berardi conducted. Her attorney was sworn in and gave a brief statement to the court regarding his legal expertise—custody proceedings, divorces, paternity actions, and visitation— and hourly rate—$225. As of December 30, 2016, Mother's attorney fees totaled $9485.13.

[11] The trial court issued an eleven-page order that examined every statutory factor for the modification of a custody order. The court found that there was a substantial change in one or more of the statutory factors and that Dr. Berardi

recommended that "parenting time for [F]ather be consistent with the Guidelines, including alternate weekends." Appellant's App. Vol. II p. 74. The trial court granted Mother's petition to modify custody, awarding her sole legal and primary physical custody of E.P. Father's parenting time was reduced to every other weekend, starting on Saturdays at 9:30 a.m. and ending on Sundays at 6:00 p.m. Father was also given "Wednesday evening care" of E.P. from after school until 7:00 p.m. *Id.* at 75. The court denied Mother's request that Father contribute to the cost of the custody evaluation but granted her request for attorney's fees. Father was ordered to pay $4742, roughly half of Mother's fees.

[12] Father filed a motion to correct errors, arguing that the court improperly reduced his parenting time to less than the Guidelines' recommendation and that it improperly awarded Mother attorney's fees. After holding a hearing on the motion, the court stated that it was willing to "amend" Father's parenting time once it received a report from Father's counselor that "he's gotten over some of these anger issues[.]" Tr. Vol. III p. 83. The court denied Father's request to reverse its award of attorney's fees.

[13] Father appeals.

# Discussion and Decision

[14] Father raises three arguments on appeal. He contends that the trial court erred when it: (1) denied his second motion for a continuance; (2) granted Mother

primary physical custody of E.P.;[1] and (3) ordered him to pay a portion of Mother's attorney's fees.

[15] The issues Father raises are all decisions that rest within the sound discretion of the trial court, and we will reverse only upon a showing that the trial court has abused its discretion. *See F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012) ("The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court."); *Fields v. Fields*, 749 N.E.2d 100, 107-08 (Ind. Ct. App. 2001) ("The modification of custody lies within the sound discretion of the trial court."), *trans. denied*; *In re Marriage of Bartley*, 712 N.E.2d 537, 547 (Ind. Ct. App. 1999) ("In awarding attorney's fees, the court has broad discretion."). An abuse of discretion occurs "when the decision is clearly against the logic and effect of the facts and circumstances that were before the trial court, including any reasonable inferences to be drawn therefrom." *Mertz v. Mertz*, 971 N.E.2d 189, 193 (Ind. Ct. App. 2012), *trans. denied*.

# I. Motion for Continuance

[16] Father's first argument is that the trial court abused its discretion when it denied his second motion for a continuance. Indiana Trial Rule 53.5 states in part that "trial may be postponed or continued in the discretion of the court, and [a continuance] shall be allowed upon a showing of good cause established by affidavit or other evidence." "No abuse of discretion will be found where the

---

[1] Father does not appeal the trial court's modification of legal custody.

moving party has not shown that he was prejudiced by the denial of his continuance motion." *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*.

[17] After the evidentiary hearing was originally set for January 6, 2017, Father obtained new counsel, who filed his appearance in November 2016. Just over a month later, on December 29, Dr. Berardi provided both parents with a 200-page file that included his handwritten notes on this case. The following day Father's attorney made his first motion for a continuance so that he could meet with Dr. Berardi to discuss what the doctor's "illegible" notes said. Father's attorney sought a two-week continuance. The trial court granted the request in part, moving the hearing from a Friday to the following Monday. At the start of the rescheduled hearing, Father's attorney again sought a continuance so that he could meet with Dr. Berardi. The trial court questioned both Mother's and Father's attorneys about their ability to review the 200-page file. Mother's attorney stated, "I've gone over them, and I've read them to my satisfaction." Tr. Vol. II p. 88. The trial court then specifically asked Father's attorney about his attempts to contact Dr. Berardi:

> Court:      Have you tried to call him and talk to him between last Friday and today?
>
> Attorney:   Last Friday and today, so you're saying - -
>
> Court:      Any time this morning?

Attorney:     No, I have not called Dr. Berardi any time this morning.

* * * *

Court:        If I was representing a client, I would be on the phone to his office as soon as I got the illegible records and try to have a meeting with him. Did you make any effort to do that?

Attorney:     Well, your Honor, Dr. Berardi was out of town when we initially got those notes and then we've had a four-day week, and - -

Court:        Did you place a phone call to his office saying I need to talk to you about your notes?

Attorney:     No, your Honor, I did not.

*Id.* at 89, 90. The trial court denied the second motion for a continuance.

[18]  Father contends that the request for a two-week continuance "was not unreasonable" because his attorney had been on the case for a short period of time. Appellant's Br. p. 23. But, as Father acknowledges, "[t]he unexpected and untimely withdrawal of counsel does not necessarily entitle a party to a continuance." *Hess v. Hess*, 679 N.E.2d 153, 154 (Ind. Ct. App. 1997). Father still has to show how he was prejudiced by the denial of the continuance, either through an affidavit or other evidence. He has not met that burden. The motion to continue was premised on the fact that Father's attorney claimed that he could not read Dr. Berardi's handwritten notes from a file that he received

well over a month after appearing on the case. Both Mother's and Father's attorneys received the 200-page file on the same day, and Mother's attorney was able to read through it in time for the hearing ten days later. Additionally, Father's attorney failed to contact Dr. Berardi's office to set up an appointment to discuss the doctor's "illegible" notes. Any prejudice that befell Father from the denial of his motion was of his attorney's own doing. The trial court did not abuse its discretion when it denied Father's second request for a continuance.

## II. Custody Modification

[19] Father also argues that the court abused its discretion when it granted Mother's motion to modify physical custody. The court may not modify an existing custody order unless the modification is in the best interests of the child and there has been a substantial change in one or more statutory factors. Ind. Code § 31-17-2-21. Indiana Code section 31-17-2-8 lists the statutory factors for a modification of physical custody: the age and sex of the child; the wishes of the child's parents; the wishes of the child (with more consideration given to a child fourteen-years-old or older); the child's interactions and relationships with any person who may significantly affect her best interest; the child's adjustment to her home, school, and community; the mental and physical health of all persons involved in the case; evidence of a pattern of domestic or family violence by either parent and evidence that a de facto custodian has cared for the child; and a designation of power of attorney of the child's parent or a person found to be the child's de facto custodian.

[20] In its order, the court entered detailed findings on several of these statutory factors. In part, the court found: E.P. was more comfortable discussing private concerns with Mother; both Mother and Father love E.P. and wish to spend as much time as possible with her; Mother was more willing to assist E.P. with homework than Father; Father and E.P. had an emotionally strained relationship; all psychological testing favored Mother over Father regarding their strengths and weaknesses, competency and supportiveness, and other admirable character traits; Father engaged in inappropriate discipline that is harsh, impulsive, and hurtful to E.P.'s sense of security and well-being; Mother did not use inappropriate discipline; Father had refused to do anything about building a collaborative, co-parenting relationship with Mother; E.P. and her stepfather had an appropriate, respectful relationship; and Father had a tendency to blame others for his negative reactions and was prone to react in anger when criticized. Appellant's App. Vol. II pp. 69-75. The court concluded that a substantial change in one or more of the statutory factors had occurred and that it was in E.P.'s best interests to modify custody. The court granted Mother primary physical custody of E.P.

[21] Father contends that these findings are not supported by the evidence. We disagree. The court's findings are based on the testimony heard during the hearing. Specifically, Father, as a form of punishment, made E.P. clean his house instead of completing her homework. Father, himself, stated that he does not believe it is his job to help E.P. with her homework and that the policy in his house is "do it yourself . . . ." Tr. Vol. III p. 27. Father also repeatedly

failed to get E.P. to school on time. During Father's parenting time, E.P. accumulated seventeen tardies in fifth grade. At the time of the hearing in January 2017, E.P. was in sixth grade and had accumulated three tardies, all of which occurred during Father's parenting time.

[22] Furthermore, the GAL and Dr. Berardi stated that Father had "vulnerabilities" that have negatively affected E.P. His vulnerabilities include "reactive anger" that occasionally "spill[ed] over into violence" and denial of his actions and how they impacted E.P. Tr. Vol. II p. 190. The GAL and Dr. Berardi also reported multiple instances of when Father had become violent either in front of or with E.P.— kicking a wall so hard that framed pictures fell to the ground and broke, kicking E.P., throwing things at her head, and placing his hand under E.P.'s chin and lifting her up so that she was standing on her tip toes. There is ample evidence to support the court's conclusion, so it was not an abuse of discretion to modify physical custody. [2]

---

[2] Father also raises arguments regarding the credibility of the GAL's and Dr. Berardi's testimony. First, Father contends that the GAL's testimony was "stale" because, at the time of trial, she had not seen E.P. in eight months. Appellant's Br. pp. 18, 25. Next, he claims that the GAL "abrogated her responsibility" to make recommendations in E.P.'s best interests and merely "adopt[ed] Dr. Berardi's recommendations without fulfilling her responsibilities as GAL." *Id.* at 25. Father's argument asks us to reweigh the evidence and determine witness credibility, which we will not do. *Pawlik v. Pawlik*, 823 N.E.2d 328, 330 (Ind. Ct. App. 2005), *trans. denied.*

Father also contends that Dr. Berardi was not able to conduct an unbiased, independent custody evaluation because of his involvement with Mother's husband's custody evaluation. But Dr. Berardi disclosed this potential conflict to the court and a hearing was held. The court concluded that Dr. Berardi could serve as the expert in this case. Father did not seek an interlocutory appeal of the court's decision, nor did he raise it as a separate issue in this appeal. Even if we wanted to address Father's concerns, Father failed to provide us with a transcript of that hearing. We would have no meaningful way to review the trial court's decision, and, furthermore, it is the trial court that weighs evidence and determines witness credibility, not this Court. *Id.*

[23]     Additionally, Father points out that the new parenting-time schedule is "less than recommended." Appellant's Br. p. 27. He does not explain what he means by this, but we assume that Father means to draw our attention to Section II of the Guidelines. Section II states that "regular parenting time" for the non-custodial parent shall be on alternating weekends "from Friday at 6:00 p.m. until Sunday at 6:00 p.m." and one evening per week "for a period up to four hours." Ind. Parenting Time G. II(D)(1). We presume that the Guidelines are applicable in all cases. *Id.* at Preamble. "Deviations from these Guidelines by either the parties or the court that result in parenting time less than the minimum time set forth [in Section II] must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case." *Id*.

[24]     In its order, the court noted that Dr. Berardi and the GAL recommended that Father be granted parenting time consistent with the Guidelines. The court then ordered Father's parenting time to be limited to every other weekend, beginning at 9:30 a.m. on Saturdays and ending at 6:00 p.m. on Sundays. Father was also granted a midweek visit on Wednesdays starting at the end of school until 7:00 p.m. The court ordered Father to have less parenting time than recommended in the Guidelines—starting on Saturday morning rather than on Friday night. At the hearing on Father's motion to correct errors, the court explained its rationale for the deviation: "Show me that he's gotten over some of these anger issues that he's dealt with in counseling, and Dad may have two nights every other weekend." Tr. Vol. III p. 83. The written order stated,

"The issue of Friday and Saturday overnight parenting time for Father on alternate weekends shall be considered upon a report from Father's counselor." Appellant's App. Vol. II p. 60. Father was provided with a written explanation for why the court deviated from the Guidelines' recommended parenting-time schedule. As already discussed, there was sufficient evidence to support the change in physical custody; that evidence also supported a reduction in Father's parenting time to an amount less than what the Guidelines recommend.

## III. Attorney's Fees

[25] Father's final argument is that the trial court erred when it ordered him to pay $4742 of Mother's attorney's fees. The trial court may order a party to pay "a reasonable amount" for the cost of the other party maintaining or defending a custody-modification proceeding or "any action filed to enforce or modify an order granting or denying parenting time rights[.]" Ind. Code §§ 31-17-7-1, 31-17-4-3. In the context of a parenting-time action, when the trial court considers making an award of attorney's fees, it "**must** consider the [financial] resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award." *In re B.J.N.*, 19 N.E.3d 765, 771 (Ind. Ct. App. 2014).

[26] There is nothing in the record as to either parent's current financial resources. The trial court gave Mother the opportunity to present her case for attorney's fees. Accordingly, her attorney testified about his legal expertise in family law

and his hourly rate. After the attorney's testimony, the court asked, "Does that conclude your case?" Tr. Vol. III p. 77. Without introducing any evidence of Father's or Mother's financial resources, the attorney replied, "It does." *Id.* On appeal, Mother contends that evidence of the parents' finances was on file with the court via a 2008 child-support order. She contends that the child-support order constituted "sufficient evidence of the income and concomitant ability of each party to contribute to attorney's fees." Appellee's Br. p. 21. This child-support order, however, was issued approximately nine years before the modification hearing. Furthermore, this child-support order shows that Father made $390 per week, while Mother made $550 per week and was responsible for 58.51% of E.P.'s expenses. Appellant's App. Vol. II p. 185. Because no evidence was presented on the parents' current financial resources, we reverse the award of attorney's fees.[3]

[27] Affirmed in part and reversed in part.

Mathias, J., and Crone, J., concur.

---

[3] Mother also argues that Father's pre-litigation behavior constituted misconduct and that this misconduct was justification for the order of attorney's fees. Even in cases of misconduct, the court must consider the parties' financial resources. *See Montgomery v. Montgomery*, 59 N.E.3d 343 (Ind. Ct. App. 2016) (reversing an award of attorney's fee based on father's violation of court-ordered parenting time because trial court failed to consider parents' financial resources), *trans. denied*; *Francis v. Francis*, 654 N.E.2d 4, 7 (Ind. Ct. App. 1995) (upholding award of attorney's fees to father based on mother's willful violations of a court order because mother "suffered from 'no money pressure'"). The trial court failed to consider the financial resources of the parents; therefore, we do not address Mother's misconduct argument.