## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2018, 7:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William W. Gooden
Mount Vernon, Indiana

ATTORNEY FOR APPELLEE

Adam J. Farrar
Van Haaften & Farrar
Mount Vernon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.C.,

*Appellant-Petitioner,*

v.

E.C.,

*Appellee-Respondent*

May 30, 2018

Court of Appeals Case No.
65A01-1712-DR-2978

Appeal from the Posey Circuit Court

The Honorable Maurice O'Connor, Special Judge

Trial Court Cause No.
65C01-1503-DR-106

**Crone, Judge.**

## Case Summary

[1]     J.C. ("Father") appeals the denial of his petition to modify child support. He claims that his current child support obligation represents a deviation of more

than twenty percent from the amount indicated by the Indiana Child Support Guidelines and that the trial court erred in failing to specify its reasons for such deviation. We agree with the trial court that Father's motion is an impermissible collateral attack on the parties' agreed summary dissolution decree and therefore affirm.

## Fact and Procedural History

Father and E.C. ("Mother") were married in 2007 and had two children, S.C. and K.C. (collectively "the Children"). In 2012, they bought a home, which was solely in Father's name and was secured by a mortgage. In March 2015, Father filed a petition to dissolve the marriage. The parties agreed to a summary dissolution decree, which they filed with the trial court. Father was represented by counsel and Mother was not. The parties waived final hearing, and on May 6, 2015, the trial court dissolved the marriage and signed the summary dissolution decree. The decree reads, in pertinent part,

> 2. That the parties shall have joint legal custody of the minor children of the marriage with Mother being the primary physical custodial parent and with Father having parenting time with the minor children of the marriage seven (7) overnights during each fourteen (14) day interval.

> 3. That as support for the minor children of the marriage Father shall pay the mortgage on the marital residence … as it comes due each month, that he shall deposit thirty-five dollars ($35.00) every two weeks in Mother's savings account commencing with Father's first pay period after the approval of this Summary Dissolution Decree and that Father shall continue paying for the life insurance policy on his life with Mother designated as the

beneficiary.

....

5. That Mother shall have possession and ownership of the marital residence … and that Father shall be responsible for paying the [$743 monthly] mortgage obligation on said marital residence as set out above.

Appellant's App. Vol. 2 at 14.

[3] At the time of the summary dissolution, Father was making $1394 per week, and Mother was not employed. After the dissolution, Mother obtained employment with a weekly wage of $473. In the winter of 2016, Father's employment was terminated, and he obtained new employment, making an average of $875 per week. Shortly thereafter, he ceased making the mortgage payments required by the summary dissolution decree. He also did not maintain life insurance as ordered.

[4] In June 2016, Mother filed a verified motion for contempt, citing Father's nonpayment of the mortgage for May and June 2016. In July 2016, Father filed a petition to modify child support, citing changes in his and Mother's income, requesting that his weekly support obligation be reduced based on an alleged deviation of more than twenty percent from the support obligation outlined in the Child Support Guidelines. In January 2017, Mother filed a second verified motion for contempt, again citing Father's nonpayment of the mortgage. Meanwhile, Mother covered all mortgage payments to ensure that a default would not occur.

In September 2017, the trial court conducted a hearing on all pending motions. During the hearing, Father introduced unsigned child support obligation worksheets and testimony requesting a reduction in his weekly support obligation to $20.51.[1]  Several weeks later, the court issued an order with findings of fact and conclusions thereon, denying Father's motion for child support modification and finding Father in contempt.  The trial court's findings and conclusions read, in pertinent part,

> 4.  The current mortgage obligation is approximately $173.00 per week.  Together with the $35.00 bi-weekly payment, the Father's total monthly payment obligation is approximately $190.00.  No Indiana Child Support Worksheet was included as a part of the Decree.
>
> ….
>
> 13.  The Father has not delivered a quitclaim deed or any other instrument of title for the marital residence as was required by the Order.
>
> 14.  The Father has not and does not maintain life insurance as agreed upon by the Decree.
>
> 15.  The Father willfully ceased making payments for the mortgage amount as required by the Decree for the past fifteen (15) months.  There was a past period of nine (9) months when

[1]  In his brief, Father has included a new child support obligation worksheet calculating his modified obligation at $70.00 per week.  Appellant's Br. at 12.  Neither the worksheet nor the $70.00 figure was introduced or even addressed in any way before the trial court.  As such, it may not be considered.  *See Cox v. Anderson*, 801 N.E.2d 775, 778 (Ind. Ct. App. 2004) (matters raised for first time on appeal and not presented in the trial court are waived).

he ceased paying the amount of $35.00 for the Children's support.

….

19. The Father asks this Court to enter at a child support obligation of $20.51 per week for two children, to be retroactively imposed at the time of the filing of the Motion to Modify on July 5, 2016. The Father further requests this Court enter an order absolving the Father of any obligation to maintain the life insurance policy previously agreed to and ordered, and to require the Mother satisfy the mortgage obligation at her own expense prior to his delivery to title to the homeplace. Effectively, the Father acknowledges that he is requesting an approximately ninety percent (90.0%) reduction in his obligation of payment for the support of the Children.

….

1. The Father has made an insufficient showing of evidence to support this Court's reduction of the existing order to $20.51 as it relates to child support for the Children. While the Father's gross weekly income has reduced, and the Mother's has increased from the time of the agreed decree, this Court cannot countenance a reduction of support of nearly 90.0%. It is in the best interests of the Children that the support remain at its current level.

2. Revoking the Father's obligations to pay the mortgage amount and forgiving his obligation to provide life insurance is a collateral attack on the property settlement agreement reached by the parties and approved by this Court on May 6, 2015, in the Decree. The Father has made no showing of fraud on the part of the Mother to allow this Court to modify their existing agreement as it relates to marital assets and liabilities.

Appellant's App. Vol. 2 at 25-27, 29-30.  The court ordered Father to deliver a quitclaim deed to Mother and record it at his own expense within seven days, and to pay the $11,987 support arrearage at a rate of $100 per week, in addition to meeting his obligations under the original summary dissolution decree.

[6]  Father now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

[7]  Father contends that the trial court erred in denying his petition to modify child support.  We review a trial court's ruling on a child support modification petition for an abuse of discretion.  *Mertz v. Mertz*, 971 N.E.2d 189, 192-93 (Ind. Ct. App. 2012), *trans. denied*.  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.  *Id*. at 193.  In conducting our review, we consider the evidence and reasonable inferences most favorable to the trial court's judgment without reweighing evidence or reassessing witness credibility.  *Id*.  Where, as here, the trial court has issued findings of fact and conclusions thereon, we apply a two-tiered standard of review, determining first whether the evidence supports the findings and second whether the findings support the judgment.  *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012), *trans. denied*.  We will not set aside a trial court's findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced that a mistake has been made.  *Id*.  We do not defer to the trial court's conclusions of law and will find clear error if the court has applied an incorrect legal standard.  *Id*.

[8]    Father maintains that changes to his and Mother's relative incomes render his current child support obligation noncompliant with Indiana's Child Support Guidelines and that the trial court failed to state a factual basis for deviating from the Guidelines. *See* Ind. Code § 31-16-8-1(b)(2) (allowing trial court, after twelve months, to modify child support order where petitioner's support obligation differs by more than twenty percent from Guideline amount); *see also* Child Support Guideline 3F (if court finds Guideline to be unjust or inappropriate, court shall state a factual basis for deviation and enter support amount deemed appropriate) and *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1303 (Ind. Ct. App. 1998) (applying factual basis requirement to cases involving modification petitions).

[9]    Father's argument presupposes that his obligation to pay the mortgage is exclusively "child support" rather than part of the property settlement. He cites language from the summary dissolution decree indicating "[t]hat as support for the minor children of the marriage Father shall pay the mortgage on the marital residence." Appellant's App. Vol. 2 at 14. Later in the decree, the provisions divide the assets and liabilities. The divided assets include the house, two vehicles, and a savings account, with possession and ownership of the house going to Mother and the mortgage obligation going to Father. The trial court examined the evidence and decree as a whole and found that Father's petition for support modification amounted to an impermissible collateral attack on the property settlement, which is subject to modification only on a showing of fraud. *See* Ind. Code § 31-15-7-9.1(a) (orders concerning property disposition

may not be revoked or modified, except in case of fraud).  In other words, the trial court found Father's mortgage obligation to be part of the marital property division, thus rendering irrelevant the Guideline 3F's requirement that the court designate which of the statutory reasons established its basis for deviating from the Child Support Guidelines.

[10]    We agree with the trial court's conclusion that there was a property division component to the summary decree's provisions concerning the home.  Mother was awarded the asset, and Father was ordered to pay the debt.  Other than a brief reference to the mortgage as support, the decree does not treat the mortgage as support.  For example, it does not state a date upon which Father's obligation to pay the mortgage would terminate, i.e., when no child is under age eighteen.  Moreover, Father's testimony during cross-examination undercuts his modification argument:

> [MOTHER'S COUNSEL]:  Was a quit claim deed ever delivered to Mother?
>
> ….
>
> A.  No.
>
> Q.  Who currently has ownership of the property?
>
> A.  Me.
>
> Q.  Is there a reason why you haven't changed that?
>
> A.  I asked that she refinance the home and get it out of my name and into hers, uh, repeatedly and she hasn't done it.  We … if, if

she had done this back in or prior to the first of the year we could have done a transfer of the mortgage directly from me to her, but in January she did a, uh, what was it the bank called it … it was basically a modification of the mortgage agreement which at the point … or at the time of the modification became effective it basically made the transfer a no go.

Q. But, the summary Dissolution Decree says that you are going to pay the mortgage.

A. As child support.

Q. But, when you wanted her to refinance it and accept that debt in her own name.

A. Now I do, yes. I am not sure what you are getting at.

Q. So … so you want her to pay your child support?

A. We are moving to modify the amount on the child support.

Tr. Vol. 2 at 27-28.

[11] The foregoing testimony underscores the importance of judicial oversight of summary dissolution decrees, to ensure a thorough and accurate designation of each party's rights and responsibilities. Unquestionably, if the court had granted Father's stated request to have Mother refinance and take over the mortgage, the balance of assets and liabilities would have been upset, which supports the court's finding that the mortgage was essentially a component of the property division. *See Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993) (adjustment of one asset or liability may require adjustment of another to avoid inequity or may require reconsideration of entire division of

marital estate). For this reason, a strong policy favors the finality of marital property divisions, one purpose of which is to eliminate vexatious litigation that often accompanies marital dissolutions. *Id.*

[12] Father did not make a showing of fraud. In fact, the record before us is remarkably thin when it comes to documentary evidence supporting any change to the summary decree, even as to "support." Essentially, the record includes a summary decree in which Mother (acting without counsel) and Father (in person and by counsel) agreed to dissolve the marriage and divide their rights and responsibilities pursuant to a contract. And by waiving any hearing before a court on the summary decree, the parties simply received the court's signature, and it was done. This decree includes a division of assets such as the home, two vehicles, and a savings account but is devoid of any dollar figures or documentation verifying the valuation of any of those assets. This means that we have no evidence of the home's market value, equity, or mortgage balance and payoff date. Moreover, as noted in the trial court's findings, the parties did not include a child support obligation worksheet with the summary decree.

[13] In sum, the trial court did not err in concluding that Father's petition was unsupported by probative evidence and amounted to an impermissible collateral attack on the property settlement. Even if we were to ignore substance and find Father's mortgage obligation to be "child support," we note that his modification petition is itself deficient, as it appears not to have been accompanied by a child support obligation worksheet. Appellant's App. Vol. 2

at 18-20. *See Beardsley v. Heazlitt*, 654 N.E.2d 1178, 1181 (Ind. Ct. App. 1995) (where petitioner failed to submit completed, verified, and signed worksheet as required by the Guidelines, trial court did not err in denying modification). Also notable is Father's arrearage of nearly $12,000, which is not subject to reduction in any case. Based on the foregoing, we conclude that the trial court acted within its discretion in denying Father's petition to modify child support. Accordingly, we affirm.

[14]   Affirmed.

Bailey, J., and Brown, J., concur