**Richard D. MEREDITH, Appellant–Respondent,**

v.

**Connie S. MEREDITH, Appellee–Petitioner.**

No. 02A03–0510–CV–520.

Court of Appeals of Indiana.

Oct. 6, 2006.

---

Kendra Gowdy Gjerdigen, Mallor Clendening Grodner & Bohrer LLP, Bloomington, IN, Cornelius B. (Neil) Hayes, Hayes & Hayes, Fort Wayne, IN, Attorneys for Appellant.

Benjamin S.J. Williams, Paul R. Sturm, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, for Attorneys for Appellee.

## OPINION ON REHEARING

CRONE, Judge.

### Background

■ On October 26, 2005, Richard D. Meredith ("Father") appealed the trial court's denial of his motion to modify child support. We reviewed the record before us and found that Father had filed a motion to correct error on July 26, 2005, and that the trial court denied Father's motion on October 5, 2005. We determined that, pursuant to Indiana Trial Rule 53.3(A) and Indiana Appellate Rule 9(A), the motion was deemed denied on September 8, 2005.[1] We concluded that Father had not timely filed his appeal, and we therefore lacked jurisdiction. Accordingly, in *Meredith v. Meredith*, No. 02A03–0510–CV–520, 852 N.E.2d 657 (Ind.Ct.App. July 20, 2006), we dismissed Father's appeal in a memorandum decision.

Father now petitions for rehearing, asserting that his appeal was timely filed and that the trial court's notice and order to appear regarding a hearing on his motion to correct error was inadvertently omitted from his appendix. Appellant's Pet. For Reh'g at 1 n. 1. Additionally, he moves for leave to file a supplemental appendix, containing the aforementioned notice and order to appear. Our review of Father's supplemental appendix reveals that on July 27, 2005, within the forty-five days required by Indiana Trial Rule 53.3, the trial court set a hearing on Father's motion to correct error. The hearing was set for September 6, 2005. On October 5, 2005, within thirty days of September 6,

1. Indiana Trial Rule 53.3(A) provides: "In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending motion to correct error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied."

2005, as required by Trial Rule 53.3, the trial court issued an order, stating: "The Court, having taken under advisement Respondent's Motion to Correct Errors and the arguments heard thereon, now denies the same." Appellant's App. at 29.[2]

Based on the additional information provided in Father's supplemental appendix, we now conclude that Father's appeal was timely filed. We therefore grant Father's petition for rehearing and his motion to file supplemental appendix, vacate our original opinion, and reverse the trial court's denial of Father's motion to modify child support and remand.

### Issue

Father raises one issue, which we restate as whether the trial court abused its discretion in denying his motion for modification of child support.

### Facts and Procedural History

On October 8, 1996, the marriage of Father and Connie S. Meredith ("Mother") was dissolved. The parties had one child, Andrew, born October 16, 1988. Pursuant to the dissolution decree, Mother was awarded primary physical custody of Andrew, and Father was ordered to pay weekly child support in the amount of $161.00. On February 25, 2004, Father filed a motion for modification of support. At the time of the initial support order and when Father filed the motion for modification, he was employed as a foundry worker at International Truck and Engine Corporation ("ICC"). On April 1, 2004, Father voluntarily retired. By retiring at that time, he increased his monthly pension by $300.00. He had worked 29.3 years.

On June 18, 2004, Mother filed an amended motion for findings of fact and conclusions thereon. On October 28, 2004,

the trial court held a hearing on the motion. On June 30, 2005, the trial court denied Father's motion for modification of support. The trial court's findings of fact and conclusions thereon provided in relevant part:

13. On February 25, 2004, the date [Father] filed his motion for Modification of Support, [Father] was employed by [ICC].

14. Subsequent to the date of filing, on April 1, 2004, [Father] took early retirement from his job with [ICC]. Immediately prior to taking early retirement [Father] was earning $19.30 per hour at [ICC]. [Father] was motivated to take early retirement to increase his monthly pension by $300.00[.]

15. At the time of the hearing, [Father] was *voluntarily* unemployed.

16. At the time of the hearing, [Father] was receiving a pension income of nearly $29,978.00, annually or approximately $576.50 per week.....

17. Between January 8, 2004 and April 8, 2004 (14 weeks), [Father] worked at [ICC] and earned $22,678.51. .... In addition to his pension income of $21,907.00 ($576.50 × 38 weeks = $21,907), [Father] is capable of earning minimum wage for 38 weeks or $7,980.00 for the remainder of the year ($210 per week × 38 weeks = $7,980.00).

18. [Father] is projected to earn $52,565.51 for the year 2004 ($22,678.51 + $21,907.00 + $7,980.00 = $52,565.51).

19. [Father]'s average annual income is determined to be approximately $66,472.00 that being the average of his income for 2001, 2002, 2003 and 2004 projections (see paragraph 21), respectively in the sums of $58,028.21;

---

2. We note that there is no indication in the chronological case summary that a hearing was ever held.

$92,092.62; $63,200.61; and $52,565.51.....

20. Based upon [Father]'s average annual income of $66,472.00, [Father] earns, Or [sic] is capable of earning a weekly gross income of $1,278.31 per week.

20. [Father] is capable of working.

. . . .

THEREFORE, BASED UPON THE FOREGOING FINDINGS, THE COURT NOW CONCLUDES THAT:

. . . .

8. The Court finds that [Father] is voluntarily unemployed.

. . . .

14. [Father]'s Federal Income Tax Return is the determination of his potential income. It serves as pieces [sic] of evidence with regard to his work history, and it reflects his employment potential and probable earnings. See, *Billings v. Billings*, 560 N.E.2d 553 (Ind.Ct.App. 1990).

. . . .

17. Based upon [Father]'s average annual income of $66,472.00, [Father] earns, or is capable of earning a weekly gross income of $1,278.31 per week.

. . . .

Based upon the Court's child support worksheet, attached hereto and incorporated herein by reference, the recommended child support is $176.41.

20. There has not been a change in circumstances so substantial and continuing to make the terms of the October 8, 1996 support order unreasonable.

21. The current order does not differ by more than twenty percent (20%) from the amount by applying the Indiana Child Support Rules and Guidelines.

22. . . . . The Court finds that the October 8, 1996 child support order is reasonable.

Appellant's App. at 17–23.

On July 26, 2005, Father filed a motion to correct error. On July 27, 2005, the trial court set a hearing on the motion for September 6, 2005. On October 5, 2005, the trial court denied the motion. We now address the merits of Father's appeal.

**Discussion and Decision**

Father asserts that the trial court abused its discretion in denying his motion for modification of child support. Initially, we observe that Mother requested findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our standard of review is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind.Ct.App.2001) (citations omitted).

In reviewing a decision regarding a petition to modify child support, we will reverse if there is a showing that the trial court abused its discretion. *In re Paternity of E.M.P.*, 722 N.E.2d 349, 351 (Ind.Ct. App.2000). We consider the evidence most favorable to the judgment without reweighing the evidence or judging the credibility of the witnesses upon review. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances that were before the trial court, including any reasonable inferences to be drawn therefrom. *Id.*

Child support orders may be modified based on the following:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code § 31–16–8–1.

Father presents two separate arguments in asserting that the trial court erred in denying his petition. First, he contends that the trial court erred in finding that he was voluntarily unemployed. Second, Father challenges the trial court's determination of his potential income. We address each argument in turn.

■ The starting point in determining the child support obligation of a parent is to calculate the weekly gross income for both parents. Ind. Child Support Guideline 3(A), cmt. 2. Weekly gross income is defined as "actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon in-kind benefits." Child Supp. G. 3(A)(1). When a parent becomes voluntarily unemployed or underemployed, the trial court must calculate support based upon a determination of potential income. Child Supp. G. 3(A)(3); *In re Paternity of Buehler*, 576 N.E.2d 1354, 1355 (Ind.Ct.App.1991). The amount of potential income to be used is determined by considering the obligor's potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. Child Supp. G. 3(A)(3); *Buehler*, 576 N.E.2d at 1355. The purposes behind determining potential income are to (1) "discourage a parent from taking a lower paying job to avoid the payment of significant support" and (2) "fairly allocate the support obligation when one parent remarries, and because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3, cmt. 2(c); *Buehler*, 576 N.E.2d at 1355–56. However, child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks. *Buehler*, 576 N.E.2d at 1356.

■ We first address Father's contention that the record does not support the trial court's finding that he is voluntarily unemployed. Specifically, Father argues that he had a legitimate reason for taking early retirement and that there is no evidence that he purposely retired to reduce his child support obligation. In support, he cites *E.M.P.*, 722 N.E.2d 349. That case, however, is distinguishable.

In *E.M.P.*, mother filed a petition to increase child support. Thereafter, father

quit his job as a garbage collector and began working for GTE. As a result, his yearly wages decreased from $46,680 to $25,168. The trial court determined that father was voluntarily underemployed for purposes of calculating his child support obligation. We reversed the trial court's finding that the father was voluntarily unemployed based on the following: (1) father had been pursuing this job change for three years; (2) father had bad knees and other health concerns arising from previous injuries as a garbage collector; and (3) father's new job had better benefits, and he would gradually make more money the longer he worked. *Id.* at 353. All these facts taken together led us to conclude that father's decline in income was not purposely brought about to reduce his support payments and that he had a legitimate reason for taking a different job. *Id.*

Here, in contrast, Father has not taken a different job with better benefits and a potential for increased income. Rather, Father testified that he voluntarily took early retirement. Appellant's App. at 58. He testified that he is not seeking employment. *Id.* at 70. He testified that he has the ability to work, but chooses not to. *Id.* at 83. Thus, the evidence supports the trial court's finding that Father is voluntarily unemployed. Father's argument amounts to an invitation to reweigh the evidence, which we must decline. We conclude that the trial court did not abuse its discretion in finding that Father is voluntarily unemployed.

■ We now turn to the trial court's determination of Father's potential weekly income. Specifically, Father argues that the trial court's determination that he has the potential to earn $1,278 per week is erroneous because it is based on pre-retirement earnings that included a substantial amount of overtime. He asserts, "The [trial] court attributed potential income to

[Father] that was not dependable and that would force him to make career decisions based strictly on the size of potential paychecks." *Id.* at 9.

■ Overtime, commissions, bonuses, and other forms of irregular income are included in the total income approach provided for by the Guidelines, "but each is also very fact-sensitive." Child. Supp. G. 3, cmt. 2(b). For example, the Guidelines should not be used to require a parent "who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings." *Id.* "Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled." *Id.* The Guidelines suggest that an equitable method of treating irregular income may be to require the obligor to pay a fixed percentage of the irregular income rather than determining the average of irregular income and including it in the obligor's gross income calculation. *Id.*

Initially, we note that neither Father nor Mother has cited any cases addressing whether the calculation of potential income should include irregular overtime income when the obligor has voluntarily retired. Our own research has not revealed any such case. The following discussion regarding the calculation of potential income, however, is instructive:

The commentary [to the Guidelines] predicts the determination of the amount of potential income to attribute to a parent will provide much stimulating debate. Therefore, the trial court is given a great deal of discretion. However, in all cases, even if the parent has no income, the commentary suggests potential income must be calculated. *Many variables may be considered, depending upon the facts peculiar to each case. In some*

situations young children may be in the home, and in others, the parent may be incapable of earning enough to even cover the cost of day care. *Each case is fact sensitive* and must be weighed by the trial court on a case-by-case basis. The guidelines specifically suggest at least the weekly gross income must be set at the minimum wage level.

*Terpstra v. Terpstra,* 588 N.E.2d 592 594–95 (Ind.Ct.App.1992) (emphases added).

In the case at bar, the trial court relied upon Father's federal income tax returns for 2001, 2002, and 2003 and his projected income for 2004 to determine his potential income. In relying on Father's tax returns, the trial court cited *Billings v. Billings,* 560 N.E.2d 553 (Ind.Ct.App.1990). In *Billings,* mother filed a petition for an increase in child support based on the increased age of the child. At the time of the divorce, father was employed as a journeyman electrician with pay of $10.00 to $12.00 per hour. After the divorce, he quit that job and worked at approximately one-half that pay until he and his new wife started their own business in their garage. His new business was operating at a loss at the time of mother's petition. The trial court found that father had quit a lucrative job and was voluntarily unemployed and used the father's tax return for the last year he was employed as a journeyman

electrician to calculate his potential income. Another panel of this Court held that the trial court properly included the tax return "in its consideration of the totality of the circumstances" when it determined the proper amount of increased support due the minor child. *Id.* at 556.

Given the totality of the circumstances in the instant case, however, we cannot say that the trial court properly relied upon Father's federal income tax returns to compute his potential income. His federal income tax returns included irregular overtime pay, and therefore averaging Father's past income was not an equitable method of determining his potential income. *See* Child. Supp. G. 3, cmt. 2(b).[3] In addition, Father retired after working 29.3 years. By retiring when he did, he was able to increase his monthly pension by $300. The inclusion of overtime pay in the determination of Father's potential income would force him to work to his full potential or make career decisions based strictly upon the size of his paycheck. *See Buehler,* 576 N.E.2d at 1356. We conclude that the trial court abused its discretion by including overtime pay in determining Father's potential income.[4]

Of course, because Father voluntarily left his employment and is still capable of working, some potential income must be

---

**3.** Mother characterizes Father's argument that the trial court abused its discretion in calculating his potential income as a challenge to the trial court's *averaging* of his income over a four-year period. Appellee's Br. at 10. She argues that averaging Father's past income to determine his potential income is proper, citing *Lloyd v. Lloyd,* 755 N.E.2d 1165, 1170 (Ind.Ct.App.2001). *Lloyd,* however, is inapposite because irregular income was not a factor in that case. We disagree that Father's primary concern is that the trial court averaged his income. Rather, he objects to the inclusion of overtime pay.

**4.** Mother argues that even if only Father's 2004 income were used to determine his child

support obligation, his recommended child support obligation would differ by less than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines, and therefore he would not meet the standard required to modify child support pursuant to Indiana Code Section 31–16–8–1. Appellee's Br. at 11. This argument begs the question of whether it would be appropriate to use Father's 2004 income to determine his child support. Because Father's 2004 income includes pre-retirement earnings, it would be error to base Father's child support on it.

imputed to him. The trial court's findings provide two appropriate possibilities. The trial court found that Father was earning $19.30 per hour before his retirement, which equates to a gross weekly income of $772 per week. In addition, the trial court found that Father's weekly pension is $576.50 per week and that he was capable of earning minimum wage equal to $210 per week, for a total of $786.50 a week. Either figure would serve as a proper basis for Father's potential income because (1) both reflect the fact that Father is voluntarily unemployed and (2) neither dictates that Father's career decisions be based strictly on the size of his paycheck. We also note that Father may have occasional opportunities to work at ICC. Appellant's App. at 60–61. Income from this occasional work may be appropriately considered as irregular income. As such, the trial court may require that Father pay a fixed percentage of that irregular income as child support. *See* Child Supp. G. 3, cmt. 2(b). Accordingly, we reverse the trial court's denial of Father's motion to modify child support and remand for a determination of Father's potential income for purposes of child support in a manner not inconsistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and BAILEY, J., concur.