


FILED

Sep 16 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Paternity: J.O'S.,

*Appellant-Respondent*

v.

K.S.,

*Appellee-Petitioner*

---

September 16, 2025

Court of Appeals Case No.
25A-JP-761

Appeal from the Hancock Circuit Court

The Honorable R. Scott Sirk, Judge

Trial Court Cause No.
30C01-2311-JP-289

---

**Opinion by Judge Bradford**
Judges May and Mathias concur.

**Bradford, Judge.**

# Case Summary

[1] K.S. ("Mother") and J.O'S. ("Father") are the parents of M.A.O'S. ("Child"). In November of 2023, Mother petitioned to formally establish Father's paternity. Mother also sought determinations on custody, parenting-time, and child-support issues. Mother argued that Father's parenting time should be restricted, claiming to have had concerns about Father's alleged alcohol use. Father denied suffering from any alcohol-related issues and requested parenting time in accordance with Indiana's Parenting Time Guidelines (the "Guidelines"). The juvenile court eventually awarded Father a restricted amount of parenting time with Child, with a path towards eventually receiving parenting time in accordance with the Guidelines. The juvenile court also ordered Father to pay $941.00 per week[1] in child support, applied retroactively, and found Father to be $30,105.00 in arrears of his child-support obligation as of January 10, 2025.[2] Father's subsequent motion to correct error was denied.

[2] On appeal, Father contends that the juvenile court abused its discretion in restricting his parenting time with Child and in setting his child-support obligation at $941.00 per week. Because we agree with Father on both

---

[1] Father was retroactively ordered to pay $976.00 per week in child support until the birth of his other child, at which time his retroactive obligation was decreased to $941.00 per week.

[2] While Father had been providing $2000.00 per month to Mother prior to the imposition of his child-support obligation, this amount was less than the amount ultimately ordered by juvenile court, which led to the arrearage.

contentions, we reverse the judgment of the juvenile court and remand for further proceedings.

## Facts and Procedural History

Child was born on November 24, 2022. On November 17, 2023, Mother petitioned to formally establish Father's paternity and sought determinations on custody, parenting-time, and child-support issues. In her petition, Mother stated concerns about Father's "ability to properly care for [Child] during his parenting time, and especially overnight, and is therefore requesting [Father's] parenting time be established to not include any overnight time, and otherwise contain sufficient provisions to ensure [Child's] health and safety while in the care of [Father]." Appellant's App. Vol. II p. 21.

The juvenile court conducted a hearing on January 13, 2025, during which it heard evidence relating to the questions of custody, parenting time, and child support. Mother expressed concerns that Father might have an alcohol-abuse problem, despite testifying that she had only ever observed him drink alcohol responsibly.

Mother accused Father of drinking "behind closed doors" and indicated that due to concerns about Father's alcohol consumption, she had purchased a breathalyzer and, initially with Father's agreement, Father had submitted to a breathalyzer test prior to beginning his parenting time with Child. Tr. Vol. II p. 43. In the fourteen months that Father had agreed to submit to Mother's uncalibrated breathalyzer tests, only six tests had showed the presence of any

alcohol, and no test results had showed Father having a blood-alcohol concentration ("BAC") above the legal limit. During this time Mother had, on rare occasions, also submitted to breathalyzer tests and had also had at least one positive test result. In April of 2024, Father began refusing to submit to Mother's breathalyzer tests. Mother also testified that she had previously observed Father in an intoxicated state.

[6] As evidence of her belief that Father had a drinking problem, Mother submitted a summary of Father's bank records in which she highlighted his purchases at bars, restaurants, liquor stores, grocery stores, and any other retail stores that sold alcohol. With regards to liquor stores specifically, Mother's summary of Father's bank records indicated that in May of 2023, he had made a purchase from a liquor store fourteen times. In August of 2023, he had made a purchase from a liquor store ten times. In November of 2023, Father made twelve purchases and, in December of 2023, Father made eleven purchases from a liquor store or other retail store that sold alcohol. Mother alleged that all told, between September of 2023 and May of 2024, Father had made sixty-eight purchases, totaling $1876.29, from liquor stores. Mother admitted that she could not verify that Child had been with Father when any of the purchases at issue had been made or that Father had even bought alcohol. With regard to these purchases, Father testified that he had "very rarely" purchased alcohol, claiming that he had instead purchased scratch-off lottery tickets and Slim Jims from the liquor stores listed on his bank records. Tr. Vol. II p. 125. Father

explained that he had stopped at those stores because they were conveniently along his route between work and home.

[7] Mother indicated that Father had averaged about "thirteen and a half" hours of parenting time per month for "the last two years[,]" and indicated that she was open to Father having more parenting time so long as there were "stipulations for sobriety" to ensure Child's safety while in Father's care. Tr. Vol. II p. 12. Father claimed that Mother had denied his requests for additional parenting time with Child. Father also expressed the concern that if he was not afforded the opportunity to have significant involvement in Child's life then Mother would "make comments to [Child] undermining" Father's relationship with Child. Tr. Vol. II p. 118. Mother requested sole legal custody of Child.

[8] Father denied having an alcohol-abuse problem. Father indicated that he only drank "[o]ccasionally." Tr. Vol. II p. 120. He further indicated that he had never been convicted of, or even charged with, an alcohol-related offense. Mother communicated to Father that she believed Father's assertion that he did not drink around Child. Father indicated that he is willing to "jump through some hoops" in order to spend time with Child and had submitted to Mother's breathalyzer tests because he "would do anything just to get some time with [his] son." Tr. Vol. II p. 123.

[9] Father's brother indicated that he does not believe that Father has a drinking problem. Father's brother testified that upon learning of Mother's concerns that Father had been "closet" drinking, he had investigated Mother's concerns by

searching Father's home and trash when Father was not present. Tr. Vol. II p. 65. He had not found any evidence supporting Mother's concerns or allegations.

[10] With regard to child support, Mother acknowledged that Father had been paying her $2000.00 per month in support of Child. Mother testified that she made $54,973.93 in rental income from two properties and $6831.75 in income relating to her service in the National Guard. Mother testified that Father is an anesthesiologist, who "has a substantially larger income" than she does. Tr. Vol. II p. 26. A collection of some of Father's pay stubs for 2023 and 2024 indicated that his take-home pay had varied, with amounts ranging between $3453.90 and $16,873.79 per pay period. The paystubs, however, did not reflect Father's full income for 2023, but only a partial amount. In the proposed child-support worksheets submitted by Mother, Father's weekly gross income was averaged out to be $7623.00 and Mother's was averaged out to be $1202.00. Mother submitted two different proposed worksheets, with the second giving Father the applicable credit after his other child was born. Mother's proposed worksheets indicated that prior to the birth of Father's other child, his weekly child-support obligation for Child should have been $976.00, and after the birth of his other child, his weekly child-support obligation for Child should have been $941.00. Noting that the amount of support that had been paid by Father was less than her proposed child-support obligation, Mother testified that if the juvenile court accepted her proposed child-support

worksheets, Father would be $31,105.00 in arrears of his child-support obligation.

[11] Father disputed Mother's projected salary for him and testified that his current income was approximately $330,000.00, or $6352.00 gross per week. Father's W-2 for 2023 supported Father's testimony, indicating that he had made $326,547.13 in 2023. Father submitted a proposed child-support worksheet, which suggested that his child-support obligation should be set at $292.00 per week.

[12] On February 6, 2025, the juvenile court issued an order that included factual findings relating to Father's alleged alcohol abuse and established Father's parenting time with and support obligations for Child. With regards to Father's alleged alcohol abuse, the juvenile court found that

> 1) Mother expressed concerns for Father's alcohol dependency and consumption. Mother testified to numerous occasions when Father left to "closet drink" which put the minor child's safety in jeopardy. Father left the day the minor child and Mother came home from the hospital and was unable to care for the child. Father came home drunk another evening and passed out with the child in his arms. When Mother requested Father not come home drunk, so he could care for the child and she could go on a walk, Father arrived too intoxicated to care for the child. Another incident, Father was left alone with the child, only for Mother to return and find a bottle of Wild Turkey on the kitchen counter. Due to these concerns, Mother requested Father breathe into a PBT before he exercised parenting time.
>
> 2) Father agreed to the PBT initially but then refused to do so beginning in April 2024.

3) Financial records provided by Father through Discovery show he made a purchase at liquor stores upward of 16 times a month over the last two years. This is directly conflicting with both Father's and Father's brother testifying Father did not have a substance[-]abuse issue.

4) Additionally, the Court has concerns that both the witness and Father attempted to cover up said purchases with suggesting liquor store purchases were made for lottery tickets or Slim Jims. The truth of the evidence is the same purchase price was made time after time, which is indicative of purchasing the same liquor bottle.

5) Testimony from Father's brother stated Father's liquor of choice was Wild Turkey which is sold at all local liquor stores for under $30.00, the numbers most notable on Father's bank records and credit card statements.

6) The Court finds it necessary to implement safety measures for Father's parenting time. Father shall submit to a follicle hair 12 panel drug test (including alcohol) within 10 days of this Order. If the test is clean of all substances including alcohol, Mother shall reimburse Father for the expense of the test. If the test if [(sic)] positive, Father shall undergo a substance abuse evaluation and comply with all recommended treatment. Father shall provide his answers and recommendations of the evaluation to counsel for Mother.

7) A condition of Father's parenting time moving forward is the use of BACTrack. Father shall be solely responsible for the cost of BACTrack. Father shall test 30 minutes prior to parenting time, ½ into parenting time and 20 minutes prior to the end of parenting time:

> a. If he is more than 10 minutes late to test, parenting time is forfeited[.]

> b. If he blows anything .01 or above, parenting time
> is forfeited[.]
> c. If something goes wrong with the device,
> parenting time forfeited until it is fixed.
> d. If parenting time is canceled by Father, there shall
> be no obligation to make up parenting time.
> e. If Father is sick, there shall be no obligation to
> make up parenting time.

Appellant's App. Vol. II pp. 13–15. The juvenile court also noted that "[s]ince [Child's] birth, Father has exercised parenting time an average of 13 hours per MONTH." Appellant's App. Vol. II p. 15.

[13] After finding that it was necessary to restrict Father's parenting time with Child due to Father's alleged alcohol-abuse issues, the juvenile court ordered as follows:

> Parenting time shall occur in phases listed below:
>
> Phase 1-
>    a. 90 days with BACTrack
>    b. 1 time a week for 8 hours Saturday
>    c. 90% compliant for all visits in this phase to move
>    onto next phase
>
> Phase 2-
>    a. 90 days with BACTrack
>    b. Every other Saturday for 10 hours
>    c. And 1 Sunday a month for 10 hours
>    d. 90% compliant for all visits in this phase to move
>    onto next phase
>
> Phase 3-

a. 90 days with BACTrack
b. Every other Saturday 10 hours
c. Every Tuesday 4-7pm
d. Every other Sunday 10 hours
e. 90% compliant for all visits in this phase to move onto next phase[.]

Appellant's App. Vol. II p. 15. The juvenile court further ordered that "[i]f Father is 90% compliant by [Child's] third birthday, he shall begin" parenting time pursuant to the Guidelines. Appellant's App. Vol. II p. 16. "If he is not, then he remains at phase 3 or whichever phase he is on and [he] continues to work towards his next phase." Appellant's App. Vol. II p. 16.

[14] The juvenile court awarded Mother sole legal and primary custody of Child and ordered Father to "pay child support in the amount of $941.00 per week after his subsequent child's birth and $976.00 before the subsequent child was born." Appellant's App. Vol. II p. 16. The juvenile court further found that Father was $30,105.00 in arrears as of January 10, 2025, and "shall pay $1,000.00 towards the arrears each month." Appellant's App. Vol. II p. 16.

[15] On February 12, 2025, Father filed a motion to correct error, in which he argued that the juvenile court's order regarding parenting time did "not consider the necessary statutes or copious case law surrounding [a] non-custodial parent's reasonable parenting time rights[,]" there was no evidence presented that "would support a factual basis for a finding of endangerment, therefore, [the juvenile court] erred when its Order limited Father's parenting time to less than the minimum amount provided under the" Guidelines, and the

juvenile court's child-support order incorrectly calculated the parties' salaries "and came to an unreasonable and incorrect amount regarding child support." Appellant's App. Vol. II pp. 77–78. Following a hearing, the juvenile court denied Father's motion.

## Discussion and Decision

[16] At the outset, we note that Mother did not submit an appellee's brief.

> In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish *prima facie* error. *Prima facie* is defined in this context as at first sight, on first appearance, or on the face of it. The purpose of this rule is not to benefit the appellant. Rather, it is intended to relieve this court of the burden of controverting the arguments advanced for reversal where that burden rests with the appellee. Where an appellant is unable to meet that burden, we will affirm.

*State Farm Ins. v. Freeman*, 847 N.E.2d 1047, 1048 (Ind. Ct. App. 2006) (internal citations and quotations omitted, emphases in original).

[17] Father appeals following the denial of his motion to correct error. "We review the denial of a motion to correct error for an abuse of discretion." *In re Paternity of H.H.*, 879 N.E.2d 1175, 1176 (Ind. Ct. App. 2008). "An abuse of discretion has occurred when the trial court's decision is against the logic and effect of the facts and circumstances before the court." *Id.* at 1177.

# I.    Restricted Parenting Time

[18]   Father contends that the juvenile court abused its discretion in restricting his parenting time with Child to an amount below the minimum afforded by the Guidelines.

> In all visitation controversies, courts are required to give foremost consideration to the best interests of the child.  We review parenting time decisions for an abuse of discretion.  A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law.
>
> The right of non-custodial parents to visit with their children is a sacred and precious privilege.  Ideally, a child should have a well-founded relationship with each parent.

*Hatmaker v. Hatmaker*, 998 N.E.2d 758, 760–61 (Ind. Ct. App. 2013) (internal quotations and citations omitted).  "A party who seeks to restrict parenting time rights bears the burden of presenting evidence justifying the restriction by a preponderance of the evidence."  *S.M. v. A.A.*, 136 N.E.3d 227, 230 (Ind. Ct. App. 2019).

[19]   Restriction of parenting time is governed by Indiana Code section 31-17-4-1(a), which provides:  "[A] parent not granted custody of the child *is entitled to reasonable parenting time* rights *unless the court* finds, after a hearing, *that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development*."  (Emphases added).  Furthermore,

> The court may modify an order granting or denying parenting
> time rights whenever modification would serve the best interests
> of the child. However, the court *shall not restrict a parent's*
> *parenting time rights unless the court finds that the parenting time might*
> *endanger the child's physical health or significantly impair the child's*
> *emotional development.*

Ind. Code § 31-17-4-2 (emphasis added). Although Indiana Code sections 31-17-4-1(a) and 31-17-4-2 use the word "might," we have "previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development. *S.M.*, 136 N.E.3d at 230. "The court's written explanation must include both a factual basis and a finding as to potential endangerment." *Id.* (internal quotation omitted).

> Extraordinary circumstances must exist to deny parenting time to
> a parent, which necessarily denies the same to the child. If the
> trial court finds such extraordinary circumstances do exist, then
> the trial court shall make *specific findings* regarding its conclusion
> that parenting time would endanger the child's physical health or
> significantly impair the child's emotional development.

*Perkinson v. Perkinson*, 989 N.E.2d 758, 765 (Ind. 2013) (emphasis added).

[20] The juvenile court awarded Father parenting time that was less than the minimum provided for by the Guidelines and placed various restrictions on what parenting time was awarded. In doing so, however, the juvenile court did not make any specific findings of endangerment. Moreover, the juvenile court's

findings that could be read as relating to endangerment are largely unsupported by the record. Those findings are as follows:

> 1) Mother expressed concerns for Father's alcohol dependency and consumption. Mother testified to numerous occasions when Father left to "closet drink" which put the minor child's safety in jeopardy. Father left the day the minor child and Mother came home from the hospital and was unable to care for the child. Father came home drunk another evening and passed out with the child in his arms. When Mother requested Father not come home drunk, so he could care for the child and she could go on a walk, Father arrived too intoxicated to care for the child. Another incident, Father was left alone with the child, only for Mother to return and find a bottle of Wild Turkey on the kitchen counter. Due to these concerns, Mother requested Father breathe into a PBT before he exercised parenting time.

> ****

> 3) Financial records provided by Father through Discovery show he made a purchase at liquor stores upward of 16 times a month over the last two years. This is directly conflicting with both Father's and Father's brother testifying Father did not have a substance[-]abuse issue.

> 4) Additionally, the Court has concerns that both the witness and Father attempted to cover up said purchases with suggesting liquor store purchases were made for lottery tickets or Slim Jims. The truth of the evidence is the same purchase price was made time after time, which is indicative of purchasing the same liquor bottle.

> 5) Testimony from Father's brother stated Father's liquor of choice was Wild Turkey which is sold at all local liquor stores for under $30.00, the numbers most notable on Father's bank records and credit card statements.

Appellant's App. Vol. II pp. 13–14.

[21] As for finding number one, the record supports the juvenile court's statement that Mother raised concerns about Father's alcohol use. Mother testified about occasions on which she believed Father had drunk alcohol in hiding but provided no evidence that Father had actually consumed alcohol on any of those occasions. Mother's stated concerns were inconsistent with her own testimony that she had never observed Father drink in an irresponsible manner. Mother also admitted that on one occasion when Father had fallen asleep, she had not observed him drinking any alcohol and it was possible that he could have fallen asleep because he was tired. She further admitted that she had not observed Father drinking on the date that she claimed to have found a bottle of Wild Turkey bourbon sitting on a cabinet. In addition, Father had agreed to blow into the non-calibrated breathalyzer purchased by Mother before exercising visitation with Child for fourteen months and had never had a result that indicated that his BAC was over the legal limit. Both Mother and Father had admitted to, on occasion, having a drink in Child's presence, but the record is devoid of any evidence indicating that Father ever drank irresponsibly or to excess around Child.

[22] As for findings three through five, Mother did not provide any proof that any of the highlighted purchases had included the purchase of alcohol. Mother merely indicated that it was possible that he had purchased alcohol. Mother's testimony regarding what she believed Father had purchased on the dates in question was pure speculation. Mother's speculation cannot support the

juvenile court's finding that Father had purchased alcohol. *Est. of Carter v. Szymczak*, 951 N.E.2d 1, 3–4 (Ind. Ct. App. 2011) ("Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation." (internal quotation omitted)), *trans. denied*. The only evidence as to what Father actually purchased was his testimony that he had "very rarely" purchased alcohol, claiming that he had instead purchased scratch-off lottery tickets and Slim Jims. Tr. Vol. II p. 125. Moreover, while Father's brother had testified that Wild Turkey bourbon had been Father's drink of choice as an undergraduate in college, Father's brother did not testify that Wild Turkey bourbon was Father's current drink of choice. The record is also devoid of *any* evidence that Wild Turkey bourbon is available for purchase "at all local liquor stores for under $30.00." Appellant's App. Vol. II p. 14.

[23] None of the above-discussed findings made a finding of endangerment. In addition, the juvenile court's findings that could potentially support a finding of endangerment were largely unsupported by the record. The juvenile court's order is therefore in contravention of statutory authority, which again requires *specific findings* of endangerment. Accordingly, we reverse the order restricting Father's parental access to Child. We remand with instructions for the juvenile court to either enter an order containing sufficient findings to support a parenting-time restriction or that does not contain such restrictions and awards Father parenting time in accordance with the Guidelines. *See Hatmaker*, 998

N.E.2d at 762 (concluding that the trial court's order was in contravention of statutory authority and remanding for further proceedings).

## II. Child Support

[24] Father also contends that the juvenile court abused its discretion in setting his child-support obligation at $941.00 per week. "A trial court's decision regarding child support will be upheld absent an abuse of discretion." *Id.* Again, "[a]n abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances that were before the trial court, including any reasonable inferences to be drawn therefrom." *Meredith v. Meredith*, 854 N.E.2d 942, 947 (Ind. Ct. App. 2006)

[25]
> The starting point in determining the child support obligation of a parent is to calculate the weekly gross income for both parents. Weekly gross income is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon in-kind benefits.

*Id.* (internal citation and quotation omitted). In setting Father's child-support obligation, the juvenile court accepted Mother's assertion that Father's weekly gross income in 2023 was $7623.00. In support of this number, Mother submitted a collection of what appeared to be some, but not all, of Father's 2023 paystubs. Mother's calculation would equate to Father earning $396,396.00 in 2023. Mother's calculation, however, was not supported by Father's W-2 for 2023, which reflected his entire income for the year and indicated that he had made $326,547.13 in 2023. Father's W-2 was consistent

with Father's testimony that he had earned $330,000.00, or $6352.00 gross, per week in 2023. Mother did not allege that Father was underemployed, had a second job, or had received any other employment benefit that could account for the over-$69,000.00 difference in Mother's calculation of Father's income and the amount provided by Father's W-2.

[26] Given the evidence detailing Father's actual income coupled with the lack of any evidence suggesting that Father had been underemployed or had received any other income benefits, we conclude that the juvenile court abused its discretion by assigning an unsupported weekly gross income to Father. We further conclude that the juvenile court abused its discretion in setting Father's child-support obligation at $941.00 per week. Consistent with our conclusion regarding Father's parenting time with Child, we note that if, on remand, the juvenile court awards Father overnight visitation as part of its parenting-time order, Father should be given credit for those nights unless the juvenile court can point to legal justification in the record for not doing so. We also note that newly-discovered evidence discussed at the hearing on Father's motion to correct error indicates that Mother had secured additional employment as a nurse shortly after the initial hearing. As such, on remand, we instruct the juvenile court to re-calculate Father's child-support obligation based on the parties' respective incomes at the time of the subsequent proceedings.

[27] The judgment of the juvenile court is reversed and we remand for further proceedings.

May, J., and Mathias, J., concur.

ATTORNEYS FOR APPELLANT

Alexander N. Moseley
Adrian Deneen
Dixon & Moseley, P.C.
Indianapolis, Indiana